## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| **GAIL CLARK, Individually, as Surviving Parent of Chad Clark, Deceased, and as Administratrix of the Estate of Chad Clark,**   :   :   : | |
| Plaintiff,   : | |
| v.   : | Civil Action No. 7:06-cv-30 (HL) |
| **SMITHKLINE BEECHAM, d/b/a GLAXOSMITHKLINE**   :   :   : | |
| Defendant.   : | |

## **ORDER**

Before the Court is a Motion for Partial Summary Judgment (Doc. 19) filed by Plaintiff Gail Clark ("Clark") and a Motion to Limit and Equalize Experts (Doc. 18) filed by Clark. For the reasons set forth below, both Motions are denied.

### I.    FACTUAL AND PROCEDURAL HISTORY

Clark filed a Complaint (Doc. 1) in this case alleging that the prescription medicine Paxil, manufactured by Defendant SmithKline Beecham, d/b/a Glaxosmithkline ("GSK"), caused her adult son, Chad Clark, to commit suicide while struggling with depression. Clark further filed a Motion for Partial Summary Judgment (Doc. 19) and a Motion to Limit and Equalize Experts (Doc. 18). Both Motions were fully briefed and came before the Court for

1

hearing on November 6, 2006.[1]  As stated on the record following counsels' arguments, and for the reasons summarized below, both Motions are denied.

## II.     APPLICABLE STANDARDS

### A.     Summary Judgment

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, a court must evaluate all evidence and any logical inferences in the light most favorable to the nonmoving party.  Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995).

"[T]he plain language of [Federal Rule of Civil Procedure] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The movant carries the initial burden and must meet this burden "by 'showing'--that is, pointing out to the district court--that there is an absence of

---

[1] Clark filed a Request for Oral Argument.  (Doc. 21.)

evidence to support the nonmoving party's case." Id. at 325. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. The nonmoving party must put forth more than a "mere scintilla of evidence." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). "[T]here must be enough of a showing that the jury could reasonably find for that party." Id. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Thus, under Rule 56, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B.     Limitation of Experts

Federal Rule of Civil Procedure 16(c)(4) empowers a court to impose "appropriate limitations or restrictions on the use of testimony under Rule 702 of the Federal Rules of Evidence" so as to avoid "unnecessary proof and . . . cumulative evidence." Fed. R. Civ. P. 16(c)(4). Rule 16(c)(4) is one of the many arrows in the quiver of any trial court that can be used to help "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. In the words of the United States Court of Appeals for the Tenth Circuit, "[i]t is

certainly within the district court's discretion to limit the number of experts, provided the witnesses are not excluded arbitrarily, or on the basis of mere numbers." Green Const. Co. v. Kansas Power & Light Co., 1 F.3d 1005, 1014 (10th Cir. 1993).

## III. ANALYSIS

### A. Motion for Partial Summary Judgment

Both parties agree that to prevail in this personal injury products liability case, Clark must prove three elements: (1) general causation (i.e., can Paxil cause suicidal behavior in some individuals), (2) specific causation (i.e., did Paxil cause Chad Clark's suicide) and (3) fault (i.e., was GSK at fault for failing to warn Chad Clark about Paxil's risk). Clark contends the first and third elements are identical to questions decided by a June 6, 2001, jury verdict in the United States District Court for the District of Wyoming.[2] Therefore, Clark filed the present Motion for Partial Summary Judgment asking the Court to estop GSK from relitigating the issues of general causation and fault and to allow her to claim the benefit of offensive nonmutual collateral estoppel, also known as issue preclusion.[3] GSK responds that two similar plaintiffs'

---

[2] The District Court in the same case also denied a motion for judgment as a matter of law or for a new trial filed by GSK after the jury's verdict. See Tobin ex rel. v. SmithKline Beecham Pharm., 164 F. Supp. 2d 1278 (D. Wyo. 2001).

[3] The Supreme Court of the United States has held that collateral estoppel can be used offensively and committed its use to the broad discretion of trial judges. See Parkland Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979). The United States Court of Appeals for the Eleventh Circuit has written that there are several prerequisites to the application of collateral estoppel: "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." CSX Transp., Inc. v. Bhd. of Maint. of Way Employees, 327 F.3d 1309, 1317 (11th Cir.

arguments have been rejected by district courts in Wyoming and Utah[4] for a number of reasons that are equally valid in the present case, that Clark cannot base a collateral estoppel claim on a vacated judgment, and that freezing the Tobin verdict as the final word on the issues of general causation and fault regarding Paxil would ignore scientific advances since 2001 and those in the future.

### 1.     The Van Dyke Decision

Clark's position on the issue of collateral estoppel took a significant blow less than a week before the hearing in this case when the United States District Court for the District of Wyoming rejected an identical collateral estoppel argument made by the same plaintiff's attorney in a similar Paxil case. See Van Dyke ex rel. v. GlaxoSmithKline, Civ. No. 05-CV-153-J (D. Wyo. Nov. 1, 2006). In Van Dyke, the court found there were three predominant reasons to deny plaintiff's motion for partial summary judgment: (1) the judgment in Tobin had been vacated by joint agreement of the parties; (2) there were factual variations between Tobin and the case at bar; and (3) there were four discretionary grounds that the court felt militated against the plaintiff's position.[5]  (Doc. 34, Ex. 1 at 9-13.)  While this Court is obviously not

---

2003) (citation and quotation omitted).

[4] Van Dyke ex rel. v. GlaxoSmithKline, Civ. No. 05-CV-153-J (D. Wyo. Nov. 1, 2006); Coburn v. SmithKline Beecham Corp., 174 F. Supp. 2d 1235 (D. Utah 2001).

[5] The court in Van Dyke concluded (1) granting the motion for summary judgment would not save significant time or resources; (2) significant questions surrounding the reliability of experts who testified during the Tobin trial had been raised since that trial; (3) scientific developments since the Tobin verdict in 2001 should be considered; and (4) granting the motion might unnecessarily confuse the jury and prejudice it against GSK.  (Doc. 34, Ex. 1 at 11-13.)

bound by a ruling made by a district court in Wyoming, the fact that the United States District Court for the District of Wyoming would refuse to accept a decision from its own district to establish collateral estoppel on an issue is particularly damning to Clark's argument. Finally, the appearance of the recent holding in Van Dyke undercuts Clark's contention in filings with this Court that the unfavorable Coburn decision was primarily the result of the fact that the ink was barely dry on the Tobin decision.

### 2. Discretionary Grounds

In short, as discussed during the November 6, 2006 hearing, the Court finds the reasoning employed by the courts in Van Dyke and Coburn[6] both sound and persuasive. Like those courts, this Court finds Clark has not established identity of the issues between the Tobin decision and the case at hand.[7] However, the Court's ruling is primarily rooted in its broad

---

[6] The court in Coburn denied the plaintiff's collateral estoppel motion for a number of concerns that substantially mirrored those expressed by the Van Dyke court, including that: (1) identity of issues was generally difficult to prove in products liability cases and specifically lacking between the Tobin and Coburn cases; (2) collateral estoppel was unlikely to save significant judicial or litigant resources or time; (3) the Tobin verdict was based on the testimony of unreliable experts; (4) other inconsistent judgments on the issue of general causation existed in non-Paxil but similar SSRI drug cases; (5) it was unwise in fix general causation in time with scientific cases. See Coburn, 174 F. Supp. 2d at 1238-41.

[7] The parties spent a fair amount of time in this case arguing about whether a vacated judgment was valid for purposes of collateral estoppel. GSK posited that because the district court in the Tobin case, on joint motion of the parties pursuant to settlement while GSK's appeal was pending, vacated the judgment and dismissed the action with prejudice, that the Tobin judgment lacks preclusive effect. Clark argued that the question was not whether a verdict had been vacated, but whether the question to be precluded had been actually litigated. The Court declines to endorse either position. First, by holding that Clark has failed to meet her burden to establish the issues at stake in the present case are identical to the ones involved in the prior litigation, the Court need not reach the second portion of the test for collateral estoppel. Second, the Court notes that even had Clark satisfied the identity of the issues element, and even were she correct that a vacated judgment could be given preclusive effect, the Court would still refuse to exercise its discretionary power to do so in the present case given the other concerns voiced herein.

discretion to determine when offensive collateral estoppel should be applied, per the mandate of <u>Parklane</u>.  Particularly troubling to the Court are the questions of whether it would be wise for this Court to freeze science in place from a 2001 verdict without taking into account subsequent advances,[8] as well as whether granting the Motion for Partial Summary Judgment would actually save that much time and/or money in the long run.  While the Court understands that denying Clark's Motion for Partial Summary Judgment may possibly entail some additional costs to the litigants and work by the Court, sometimes those just go with the territory.  The concerns voiced by the courts in <u>Coburn</u> and <u>Van Dyke</u> and echoed by GSK are fatal to Clark's attempt to estop GSK's litigation of the elements of general causation and fault. The equities in this matter lie with GSK.  Clark's Motion for Partial Summary Judgment (Doc. 19) is denied.

### B.    Motion to Limit and Equalize Experts

Both parties agree that the Court has the power to limit the number of experts in this case, should it deem such a limitation is necessary.  Clark argues that, should the Court deny her Motion for Partial Summary Judgment, the Court should limit each side to two, or at most three, liability experts.[9]  Clark argues these limitations are necessary to protect her, a grieving mother, from the possibility that GSK, a multinational corporation with virtually bottomless

---

[8] The Court also notes that the parties' experts' disagreement about the state of change in scientific opinion regarding the relationship between Paxil and suicidal tendencies since 2001 alone would be enough to constitute a question of fact that demands resolution at trial rather than on a motion for summary judgment.

[9] Clark also argued that, should the Court grant her Motion for Partial Summary Judgment, the Court should limit the number of liability experts to one or two.  Given the Court's denial of Clark's Motion for Partial Summary Judgment, this request is obviously moot.

pockets, will seek to bury her under an avalanche of experts and the costs that arise therefrom. GSK counters that such an arbitrary limitation is of the very sort that numerous cases warn against, and vigorously protests that any such limitation would hamper its ability to present an effective defense, especially in light of the complicated nature of this case.

As stated on the record, the Court does not believe it is necessary or appropriate to limit the number of experts, pursuant to Rule 16(c)(4), at this time. Although GSK undoubtedly has greater financial resources than Clark, that is hardly a reason to restrict its ability to properly defend itself. The Court is mindful of its ability to limit the number of experts or the amount of their testimony in the future, should it seem that GSK is calling them merely to beggar Clark or should their testimony prove cumulative. However, at this point, Clark's Motion to Limit and Equalize Experts (Doc. 18) is denied.[10]

## IV.   CONCLUSION

The Motion for Partial Summary Judgment (Doc. 19) and the Motion to Limit and Equalize Experts (Doc. 18) filed by Clark are denied.

SO ORDERED, this the 15th day of November, 2006.

                        **s/   Hugh Lawson**

                   **HUGH LAWSON, JUDGE**

---

[10] Per the Court's bench ruling at the conclusion of the November 6, 2006, hearing, Clark shall have until December 15, 2006, to designate her experts and provide reports. GSK will have until January 31, 2007 to designate its experts and provide reports. These dates replace the expert designation dates set forth in the Court's previous Order of September 21, 2006 (Doc. 31).

pdl